IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs August 15, 2017

**BILLY TATE v. STATE OF TENNESSEE**

**Appeal from the Criminal Court for Hamilton County**
**Nos. 282341, 272364      Don W. Poole, Judge**

_____

**No. E2016-01554-CCA-R3-PC**

_____

The Petitioner filed for post-conviction relief, arguing that he received ineffective assistance of counsel. The post-conviction court denied relief. On appeal, the Petitioner argues that trial counsel's failure to discover evidence of the investigating detective's DUI arrest, subsequent reckless driving conviction, and internal affairs investigation to use to impeach the detective's reputation for honesty was deficient and prejudicial. After a thorough review of the facts and applicable case law, we affirm the denial of post-conviction relief.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROBERT L. HOLLOWAY, JR., J., delivered the opinion of the court, in which THOMAS T. WOODALL, P.J., and CAMILLE R. MCMULLEN, J., joined.

Gerald L. Gulley, Jr., Knoxville, Tennessee, for the appellant, Billy Tate.

Herbert H. Slatery III, Attorney General and Reporter; Renee W. Turner, Senior Counsel; Neal Pinkston, District Attorney General; and Charlie Minor, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**I. Factual and Procedural Background**

Billy Tate, the Petitioner, was convicted of burglary of a business and theft of property valued between $1,000 and $10,000. *State v. Billy Tate*, No. E2010-01336-CCA-R3-CD, 2011 WL 3841962, at *1 (Tenn. Crim. App. Aug. 30, 2011), *perm. app. denied* (Tenn. Nov. 15, 2011). He received an effective sentence of twelve years. *Id.* On

direct appeal, this court concluded that "[b]ecause [the Petitioner] . . . failed to provide an adequate record for review on appeal, these issues [were] waived, and the judgments of the trial court [were] affirmed." *Id.* After filing a petition for post-conviction relief, the Petitioner was granted a delayed direct appeal.

*Jury Trial*

In our opinion affirming the Petitioner's convictions on delayed direct appeal, this court summarized the evidence presented at the Petitioner's trial as the following:

> At trial, Barbara Sue Vaughn testified that she and her husband, Kenny Vaughn, owned Vaughn Equipment Repair in Chattanooga, Tennessee. On March 30, 2009, she arrived at the business at approximately 10:00 a.m. and noticed that someone had been inside the business. Items that she had left "sitting just inside the door" the previous Friday were missing, and in the office, "[her] desk drawers were pulled out, some stuff was just turned upside down, [and] some was in the floor . . . ." Mrs. Vaughn testified that the thief had entered by pulling away the siding from the back of the building. She and her husband made a list of all of the items taken, some of which were new and others used, and they estimated that the total value of the items taken was $3,350.

> On cross-examination, Mrs. Vaughn testified that she was the last person to leave the business on Friday, and she locked the doors. The business was closed over the weekend, and no one should have been inside. She said that the property is surrounded by a seven to eight-foot tall chain-link fence. Mrs. Vaughn further said that a person could get in through a place where "the fence doesn't go all the way together."

> Detective Early testified that he was assigned to the property crimes division. On March 30, 2009, he responded to a burglary at Vaughn Equipment Repair. He noticed several footprints inside and outside of the building, so he requested that a crime scene investigator photograph the prints. Detective Early went to a residence in the same neighborhood of Vaughn Equipment Repair. [The Petitioner] was at the residence, and Detective Early had the opportunity to see the bottom of [the Petitioner]'s shoes. Detective Early testified that based on his observations, [the Petitioner]'s shoes matched the shoe prints at the scene. Detective Early said that he transported [the Petitioner] to the scene so that the crime scene investigator could photograph his shoes. While there, Napoleon Dunson approached him and Mr. Vaughn to ask whether Mr. Vaughn was missing a

chainsaw. Mr. Vaughn confirmed that his chainsaw was missing, and Mr. Dunson advised Detective Early that he had seen a person walking away from the business with a chainsaw during the weekend. Mr. Dunson told Detective Early that he would be able to identify the person, so Detective Early asked him if the person with the chainsaw was the person ([the Petitioner]) sitting in the front seat of Detective Early's vehicle. Mr. Dunson said that he was "absolutely positive" that he was the same person.

At this point in the trial, the State asked Detective Early what happened next, and Detective Early testified that [the Petitioner] refused to make a statement. [Trial] counsel moved for a mistrial, but the trial court issued a curative instruction instead, ruling that there was not a manifest necessity to declare a mistrial. The trial court instructed the jury that Detective Early's statement was nonresponsive and inappropriate and should not be considered during deliberations.

On cross-examination, Detective Early testified that he had no specialized training in "footprint analysis," and he did not send the shoe print photographs or [the Petitioner]'s shoes to the Tennessee Bureau of Investigation for analysis. He said, "[It was] clear [that] it was the same print." Detective Early testified that he did not do any research about how common [the Petitioner]'s shoes were or what stores in the area sold them.

Chattanooga Police Investigator Brian Russell testified that he photographed the crime scene, including the various shoe prints, and [the Petitioner]'s shoes. He also collected [the Petitioner]'s shoes as evidence. Investigator Russell processed the scene for fingerprints but was unable to lift any prints.

Napoleon Dunson testified that he saw a person inside the fence of Vaughn Equipment Repair during the weekend prior to March 30, 2009. On the same day, he saw a person walking down the street carrying a chainsaw. He did not know if it was the same person. He said that he came very close to the person carrying the chainsaw and got a "real good" look at him. Mr. Dunson identified [the Petitioner] in the courtroom as the person with the chainsaw. He testified that he also identified [the Petitioner] at the crime scene while [the Petitioner] was sitting in the police detective's vehicle.

*State v. Billy Tate*, No. E2012-02576-CCA-R3-CD, 2013 WL 5436533, at *1-4 (Tenn. Crim. App. Sept. 27, 2013), *no perm. app. filed*. This court affirmed the trial court's

judgments. *Id.* at \*8.  The Petitioner did not seek further review from the Tennessee Supreme Court.

*Post-Conviction Proceedings*[1]

In his Amended Petition for Post-Conviction Relief, the Petitioner argued, in part, that "[t]rial counsel was ineffective in that trial counsel failed to investigate Officer Early's pending charges for which he was under investigation."  At the post-conviction hearing, Detective Mike Early testified that he was employed by the Chattanooga Police Department in the property crimes division.  Detective Early stated that in 2009, he responded to the scene of a burglary of a business on Linburg Avenue.  Detective Early testified that, while he was investigating this case and during the pendency of trial, he was not being investigated by internal affairs.  On cross-examination, Detective Early agreed that he was previously charged with driving under the influence in March 2008 and that he pled guilty to reckless driving.  Detective Early stated that the internal affairs investigation had concluded by the time he investigated the Petitioner's case.

The Petitioner testified that trial counsel failed to properly investigate Detective Early, who had been investigated by internal affairs.  More specifically, he testified that "[Detective Early] was under investigation, you know, at that time, because, you know, dude was out there in the workhouse with [the Petitioner], he had, you know, we got the paperwork that he was under investigation, you know."

Regarding trial counsel's failure to investigate Detective Early, the following exchange occurred:

> [THE STATE]: And, now, the only basis for your belief that Detective Early was under investigation, or that there was some IA complaint, is something that you heard about while you were in the jail awaiting trial?
>
> [THE PETITIONER]: It wasn't what I heard about it, I got the paperwork, I still got the paperwork at my house, I sent it to my house, you know.
>
> [THE STATE]: Now, do you have any clue what the internal investigation was regarding?

---

[1] For purposes of conciseness, the testimony from the post-conviction hearing summarized in this opinion is limited to testimony relevant to the Petitioner's argument on appeal.

[THE PETITIONER]: Yeah, they said he stopped on the side of the interstate and pulled his thing out and started pissing, you know, so highway patrol arrested him, you know.

[THE STATE]: But even if that, I'm not aware of that, but even if that did happen, how would that have affected your case, how do you feel like that would affect your case?

[THE PETITIONER]: Show, you know, if a man called himself upholding the law, stopped on the side of the freeway and started urinating, ain't [sic] no telling what you're liable to do, you know.

[THE STATE]: Okay. But how would that affect your case if that were true?

[THE PETITIONER]: How it would affect my case? Because it make sure kind of, honestly, you know, how can a person be honest when he do something like that, you know.

[THE STATE]: Use the restroom on the side of the road, that makes you a dishonest individual?

. . . .

[THE STATE]: Okay. So you thought that should have been investigated?

[THE PETITIONER]: Yeah, I think they should have -- yeah.

Trial counsel testified that she had practiced law since 1999 and that she was appointed to represent the Petitioner. Trial counsel stated that she met with the Petitioner, reviewed discovery with him, negotiated plea offers with the State, filed pretrial motions, and spoke with Detective Early, Mr. Dunson, and the Vaughns. She explained that the Petitioner rejected the State's plea offers and proceeded to trial. Trial counsel testified that she did not receive any information regarding internal affairs investigation of Detective Early while she represented the Petitioner. Trial counsel also stated that she was not aware of Detective Early's reckless driving conviction during her representation of the Petitioner, but she did not "see how that would make a difference[]" in the Petitioner's case.

In its order, the post-conviction court found that trial counsel spoke with Detective Early and thoroughly cross-examined Detective Early at the suppression hearing.[2] The post-conviction court found that there was no "impeachment evidence or other material information that [trial] counsel did not discover as a result of any omission in this respect, except for Det[ective] Early's arrest for driving under the influence and conviction for reckless driving." The post-conviction court concluded that trial counsel's failure to discover this evidence did not prejudice the Petitioner because the "minor traffic offenses would have had minimal, if any, effect on the detective's credibility[]" without additional evidence of that Detective Early's criminal behavior extended to the crime scene. The post-conviction court denied relief to the Petitioner. The Petitioner timely appealed.[3]

## II. Analysis

On appeal, the Petitioner argues that, because he testified at the post-conviction hearing that he received some "paperwork" while he was in jail that discussed Detective Early's internal affairs investigation, trial counsel had notice of the investigation and should have further investigated the charges against Detective Early and used the information to impeach his reputation for honesty at trial. The State responds that Detective Early's DUI arrest and reckless driving conviction were not admissible for impeachment purposes under Tennessee Rule of Evidence 609(a)(2) because the reckless driving conviction was not "'punishable by death or imprisonment in excess of one year and does not involve 'dishonesty or false statement.'" Additionally, the State contends that "[t]he fact that trial counsel did not know about an internal affairs investigation did not affect the outcome of the trial." We agree with the State.

### Standard of Review

In order to prevail on a petition for post-conviction relief, a petitioner must prove all factual allegations by clear and convincing evidence. *Jaco v. State*, 120 S.W.3d 828, 830 (Tenn. 2003). Post-conviction relief cases often present mixed questions of law and fact. *See Fields v. State*, 40 S.W.3d 450, 458 (Tenn. 2001). Appellate courts are bound by the post-conviction court's factual findings unless the evidence preponderates against such findings. *Kendrick v. State*, 454 S.W.3d 450, 457 (Tenn. 2015). When reviewing

---

[2] The post-conviction court made numerous other findings of fact and conclusions of law relating to the Petitioner's other allegations. However, for purposes of conciseness, we have limited the summary of the post-conviction court's order to the grounds of ineffective assistance of counsel raised on appeal.

[3] We note that the post-conviction court's order denying relief was filed on May 31, 2016, and that the Petitioner filed his Notice of Appeal on July 28, 2016. However, the Petitioner filed a motion asking this court to waive timely filing of his notice of appeal, and this court concluded that waiving of timely filing was required in this case in the interests of justice. *See* Tenn. R. App. P. 4(a).

the post-conviction court's factual findings, this court does not reweigh the evidence or substitute its own inferences for those drawn by the post-conviction court. *Id.*; *Fields*, 40 S.W.3d at 456 (citing *Henley v. State*, 960 S.W.2d 572, 578 (Tenn. 1997)). Additionally, "questions concerning the credibility of the witnesses, the weight and value to be given their testimony, and the factual issues raised by the evidence are to be resolved by the [post-conviction court]." *Fields*, 40 S.W.3d at 456 (citing *Henley*, 960 S.W.2d at 579); *see also Kendrick*, 454 S.W.3d at 457. The post-conviction court's conclusions of law and application of the law to factual findings are reviewed de novo with no presumption of correctness. *Kendrick*, 454 S.W.3d at 457.

*Ineffective Assistance of Counsel*

The right to effective assistance of counsel is safeguarded by the Constitutions of both the United States and the State of Tennessee. U.S. Const. amend. VI; Tenn. Const. art. I, § 9. In order to receive post-conviction relief for ineffective assistance of counsel, a petitioner must prove: (1) that counsel's performance was deficient; and (2) that the deficiency prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see State v. Taylor*, 968 S.W.2d 900, 905 (Tenn. Crim. App. 1997) (stating that the same standard for ineffective assistance of counsel applies in both federal and Tennessee cases). Both factors must be proven in order for the court to grant post-conviction relief. *Strickland*, 466 U.S. at 687; *Henley*, 960 S.W.2d at 580; *Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996). Accordingly, if we determine that either factor is not satisfied, there is no need to consider the other factor. *Finch v. State*, 226 S.W.3d 307, 316 (Tenn. 2007) (citing *Carpenter v. State*, 126 S.W.3d 879, 886 (Tenn. 2004)). Additionally, review of counsel's performance "requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689; *see also Henley*, 960 S.W.2d at 579. We will not second-guess a reasonable trial strategy, and we will not grant relief based on a sound, yet ultimately unsuccessful, tactical decision. *Granderson v. State*, 197 S.W.3d 782, 790 (Tenn. Crim. App. 2006).

As to the first prong of the *Strickland* analysis, "counsel's performance is effective if the advice given or the services rendered are within the range of competence demanded of attorneys in criminal cases." *Henley,* 960 S.W.2d at 579 (citing *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975)); *see also Goad*, 938 S.W.2d at 369. In order to prove that counsel was deficient, the petitioner must demonstrate "that counsel's acts or omissions were so serious as to fall below an objective standard of reasonableness under prevailing professional norms." *Goad*, 938 S.W.2d at 369 (citing *Strickland*, 466 U.S. at 688); *see also Baxter*, 523 S.W.2d at 936.

Even if counsel's performance is deficient, the deficiency must have resulted in prejudice to the defense. *Goad*, 938 S.W.2d at 370. Therefore, under the second prong of the *Strickland* analysis, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* (quoting *Strickland*, 466 U.S. at 694) (internal quotation marks omitted).

At the post-conviction hearing, Detective Early stated that he was previously charged with driving under the influence in March 2008 and that he pled guilty to reckless driving. Detective Early explained that the internal affairs investigation had concluded by the time he investigated the Petitioner's case. The Petitioner testified that he received "paperwork" relating to Detective Early's internal affairs investigation prior to trial. The Petitioner stated that the internal affairs investigation related to an incident of public urination and stated that trial counsel could have used that information to impeach Detective Early's reputation for honesty. Trial counsel testified that she was not aware of Detective Early's reckless driving conviction during her representation of the Petitioner, but she did not "see how that would make a difference[]" in the Petitioner's case. The post-conviction court found that there was no "impeachment evidence or other material information that [trial] counsel did not discover as a result of any omission in this respect, except for Det[ective] Early's arrest for driving under the influence and conviction for reckless driving." The post-conviction court concluded that trial counsel's failure to discover this evidence did not prejudice the Petitioner because the "minor traffic offenses would have had minimal, if any, effect on the detective's credibility[]" without additional evidence that Detective Early's criminal behavior extended to the crime scene.

We agree with the post-conviction court that trial counsel's failure to discover evidence of Detective Early's reckless driving conviction and internal affairs investigation and use of that information to impeach his testimony did not prejudice the Petitioner. Under Tennessee Rule of Evidence 608(b), "[s]pecific instances of conduct of a witness for the purpose of attacking or supporting the witness's character for truthfulness" must be "probative of truthfulness or untruthfulness[]." Tenn. R. Evid. 608(b). Whether the internal affairs investigation related to Detective Early's DUI arrest or the alleged public urination incident, neither of these instances of conduct are probative of Detective Early's reputation for honesty or dishonesty.

Additionally, Tennessee Rule of Evidence 609(a)(2) allows the admission of evidence that a witness has been convicted of a crime for the purpose of attacking the credibility of that witness if the crime is "punishable by death or imprisonment in excess of one year under the law under which the witness was convicted or, if not so punishable,

the crime must have involved dishonesty or false statement." Tenn. R. Evid. 609(a)(2). A reckless driving conviction is not punishable by death or imprisonment in excess of one year, *see* Tenn. Code Ann. § 55-10-205(d)(1) (reckless driving conviction is a Class B misdemeanor); *see also* Tenn. Code Ann. § 40-35-302 (misdemeanor sentencing), nor does a conviction of reckless driving involve dishonesty or false statement. *See State v. Jimmy Blanton*, No. 01-C-01-9306-CR-00166, 1994 WL 115965, at *4 (Tenn. Crim. App. Apr. 7, 1994), *perm. app. denied* (Tenn. July 18, 1994) (reckless driving conviction does not involve "dishonesty or false statement[]"). Even if trial counsel had been aware of Detective Early's DUI arrest, reckless driving conviction, or the internal affairs investigation, she would not have been able to use any of those instances of conduct or the conviction to impeach Detective Early. Thus, we agree with the post-conviction court that the Petitioner has not established that "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Goad*, 938 S.W.2d at 370 (quoting *Strickland*, 466 U.S. at 694) (internal quotation marks omitted); *see Rickie Boyd v. State*, No. W2005-01599-CCA-R3-PC, 2006 WL 1168843, at *4 (Tenn. Crim. App. May 1, 2006), *perm. app. denied* (Tenn. Sept. 25, 2006) (holding that trial counsel's failure to impeach the victim with her prior driving convictions was neither deficient nor prejudicial because the victim's "driving record, however dreadful, was not relevant to the veracity of her testimony as it pertained to her identification of the petitioner as the man who robbed the Mapco Express[]"). Because we have determined that the Petitioner has failed to establish that he was prejudiced by trial counsel's representation, we will not address whether trial counsel's performance was deficient. *See Finch v. State*, 226 S.W.3d 307, 316 (Tenn. 2007) (citing *Carpenter v. State*, 126 S.W.3d 879, 886 (Tenn. 2004)). The Petitioner is not entitled to relief.

### III. Conclusion

For the aforementioned reasons, the judgment of the post-conviction court is affirmed.

_____
ROBERT L. HOLLOWAY, JR., JUDGE