IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
October 10, 2017 Session

## MICHAEL BARNES v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Johnson County**
No. 5911      Lisa Rice, Judge

_____

## No. E2017-00048-CCA-R3-PC

_____

The Petitioner, Michael Barnes, appeals the denial of post-conviction relief from his 2013 Johnson County Criminal Court conviction of possession of contraband in a penal institution, for which he received a sentence of fifteen years.  In this appeal, the Petitioner contends that he was denied the effective assistance of counsel because trial counsel failed to: (1) "object with regard to the chain of custody"; (2) "object with regard to the entry of exhibits into evidence"; (3) explain to the Petitioner the maximum sentence that he faced; and (4) address the issue of "selective prosecution."  Discerning no error, we affirm the denial of post-conviction relief.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROBERT L. HOLLOWAY, JR., J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and CAMILLE R. MCMULLEN, JJ., joined.

Cameron L. Hyder, Elizabethton, Tennessee, for the appellant, Michael Barnes.

Herbert H. Slatery III, Attorney General and Reporter; Zachary T. Hinkle, Assistant Attorney General; Anthony Wade Clark, District Attorney General; and Matthew Roark, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

### Factual and Procedural Background

The Petitioner, while incarcerated in the Northeast Correctional Complex (NCC), was indicted for Class C felony "knowingly possess[ing] ten (10) Buprenorphine tablets,

a Schedule III controlled substance[.]"[1]  A jury convicted the Petitioner of possession of contraband in a penal institution, and the trial court sentenced the Petitioner to fifteen years as a career offender.  This court affirmed the conviction on appeal.  *State v. Michael Barnes*, No. E2013-01375-CCA-R3-CD, 2014 WL 869548, at *1 (Tenn. Crim. App. Mar. 4, 2014), *perm. app. denied* (Tenn. Aug. 26, 2014).

## Petition and Amended Petition for Post-Conviction Relief

The Petitioner filed a pro se petition for post-conviction relief claiming that he received the ineffective assistance of counsel, that he was denied a fair and impartial jury, and that his due process rights were violated because he was treated differently from other inmates.  Specifically, the Petitioner averred that trial counsel was ineffective for failing to: file a motion for discovery; strike a juror who worked for the Tennessee Department of Correction (TDOC); correct the trial court when it stated to the jury that the Petitioner was charged with a Class E felony; object to a juror who was the second cousin of the prosecutor; and obtain a medical expert to explain to the jury that Suboxone "is an opiate blocker and not a drug itself."  After appointment of counsel, an amended petition was filed incorporating the previous pleadings and specifically claiming that trial counsel failed to properly advise "the Petitioner of certain rights and failed to assert such rights for the Petitioner," failed to request a medical expert to evaluate the drugs, failed to fully investigate, and failed to object to the chain of custody of certain evidence.

## Post-Conviction Relief Hearing

Trial counsel testified that she was employed by the District Public Defender's Office at the time the Petitioner was arraigned and through his jury trial.[2]  After the Petitioner's trial, trial counsel accepted employment out of state, and another attorney with the Public Defender's Office ("second trial counsel") filed the motion for new trial and handled the appeal.  Trial counsel testified that she had extensive experience in criminal matters and estimated that she had been involved in approximately one hundred and twenty jury trials.

Trial counsel met with the Petitioner on four occasions at the prison and stated that she was adequately prepared for trial.  Trial counsel was questioned about two jurors, one whom the Petitioner claimed worked for TDOC and the other whom the Petitioner

---

[1] The contraband is sometimes referred to in the record as Suboxone.  Suboxone contains Buprenorphine.  "Any material, compound, mixture, or preparation containing [Buprenorphine] or [its] salts" is a schedule III controlled substance.  Tenn. Code Ann. § 39-17-410(e)(2)(A).  For purposes of clarity, this opinion will refer to the contraband as Suboxone.

[2] The Petitioner's first jury trial resulted in a mistrial because there were an insufficient number of jurors in the venire.

claimed was a second cousin of the prosecutor. Trial counsel did not recall a juror who was employed by TDOC or whether the juror who was a second cousin of the prosecutor was on the jury. She stated there was no question about the identity of the Suboxone and that she did not remember the Petitioner's making a request to have the pills examined by an expert. Trial counsel acknowledged that the assistant district attorney failed to move into evidence certain exhibits that were marked for identification. She stated that, during cross-examination, she "explored" issues concerning the chain of custody of the Suboxone but that she "didn't really get anywhere with it" and did not believe she had "enough of an issue to question . . . the chain of custody." She thought that the State was treating the Petitioner too harshly and stated that often these types of issues were handled administratively by TDOC. She explained the minimum and maximum sentence to the Petitioner and said that the Petitioner knew that he was facing a potential fifteen-year sentence. She said that the initial plea offer from the State was ten years consecutive to his prior convictions and that she later obtained a six-year, consecutive offer, and that the Petitioner rejected both offers.

Second trial counsel testified that she took over representation of the Petitioner when trial counsel left the employment of the Public Defender's Office. She filed a motion for new trial and handled the direct appeal. She raised the issue concerning the chain of custody in the motion for new trial and on appeal. She reviewed the trial transcript and noticed that the State only had the exhibits marked for identification.

The Petitioner testified that he was serving a twenty-five year sentence when he was charged with possession of contraband. He said that trial counsel met with him at the prison but that he could not remember the number of meetings. He said that the duration of each meeting was about thirty minutes to an hour. He remembered trial counsel's telling him that the State offered a six-year sentence to be served consecutively to his current sentence, which he said angered him because other inmates charged in the incident received three-year concurrent sentence offers. He claimed that trial counsel did not explain the maximum sentence and that "he would have looked more" at the six-year consecutive offer if he had known the maximum sentence he was facing.

The Petitioner said there were two or three current or former TDOC employees in the jury venire and that trial counsel struck one employee who had worked in his pod. The Petitioner stated that he "didn't push the issue" of striking jurors with ties to the prison because he was told it was "so hard to get" a change of venue.

The Petitioner stated that he had concerns with the chain of custody "because nobody had been charged [at the prison] in so long[.]" He said there were "two or three people that are on the chain of custody form that didn't testify[.]" He said that he asked trial counsel to object, but she failed to do so. He also stated that he asked trial counsel to

- 3 -

file a motion for discovery, but she stated there was no need because "this is an open case and they'd given us everything that we want."

The Petitioner claimed that another attorney from the Public Defender's Office told him at his sentencing hearing "that they were going to sentence [him] to fifteen years" because "[he] had all of these felonies." He said this was the first time he knew that he was facing a fifteen-year sentence and that he previously thought that "the most that [he] was facing ten years."

The Petitioner claimed that trial counsel failed to raise certain issues that he wanted argued, such as "selective and vindictive prosecution[]" because the other two inmates charged for the offense were offered concurrent sentences, when the Petitioner only received a consecutive offer.

On cross-examination, the Petitioner stated that he "underst[ood] the sentencing guidelines, like, we went over all of that type stuff." He said however, that no one told him that he "was a Career Offender[.]" He claimed trial counsel never told him there was an initial offer of ten years. The Petitioner admitted that he was not contesting the fact that the pills were Suboxone. He asked trial counsel to obtain a medical expert "to show that [Suboxone is] not a drug that you . . . use to get high on[.]" He said that he did not know at the time he made the request that Suboxone was a controlled substance. The Petitioner provided the name of the juror who was a TDOC employee to post-conviction counsel. He could not recall if he asked trial counsel to strike the juror. The Petitioner did not know if the juror who was the prosecutor's second cousin was dismissed.

On recross-examination, the Petitioner agreed that he told trial counsel that he would only accept a plea offer for a concurrent sentence.

## Order Denying Post-Conviction Relief

In its Preliminary Order dated May 26, 2015, the post-conviction court appointed counsel and dismissed two of the grounds raised in the Petitioner's pro se petition—that he was denied a fair and impartial jury and that he was the subject of selective prosecution by the State, finding that the "Petitioner failed to assert these on direct appeal and therefore, they are waived."

On October 4, 2016, the post-conviction court entered its extensive findings of fact and conclusions of law addressing the Petitioner's remaining claim of ineffective assistance of counsel. The court accredited trial counsel's testimony that she was adequately prepared for trial. The court found that:

- 4 -

(1)        trial counsel received all discoverable materials from the State and that according to trial counsel "there were no surprises";

(2)        there was no proof that any juror was biased or that any member of the jury "was exposed to extraneous prejudicial information or subjected to an improper outside influence";

(3)        the Petitioner failed to show how a medical expert, "if presented, would have provided a defense to him for the offense of Introduction of Contraband into a Penal Facility";

(4)        the Petitioner failed to present any witnesses that he claimed should have been called at trial or that were not interviewed by trial counsel;

(5)        in the direct appeal, this court stated that "[t]he testimony presented at trial was sufficient to establish all links in the chain of custody. . ."; and

(6)        "[trial counsel] clearly detailed the plea offer on the record and the potential for a fifteen[-]year sentence if convicted" and that the Petitioner, after being advised that he faced a possible fifteen-year sentence, rejected the plea offer, and stated that he wanted to proceed with trial.

This timely appeal followed the post-conviction court's entry of its written order denying relief.

## Analysis

On appeal the Petitioner raises one issue: "Whether the [post-conviction] court erred in failing to find that trial counsel was ineffective in the representation of the [Petitioner] at trial." Specifically, the Petitioner argues that trial counsel provided deficient performance when she failed to: (1) "object with regard to the chain of custody"; (2) "object with regard to the entry of exhibits into evidence"; (3) explain to the Petitioner the maximum sentence that he faced; and (4) address the issue of "selective prosecution." The State argues that the Petitioner did not establish that trial counsel was ineffective. We agree with the State.

### Standard of Review

In order to prevail on a petition for post-conviction relief, a petitioner must prove all factual allegations by clear and convincing evidence. *Jaco v. State*, 120 S.W.3d 828, 830 (Tenn. 2003). Post-conviction relief cases often present mixed questions of law and fact. *See Fields v. State*, 40 S.W.3d 450, 458 (Tenn. 2001). As such, we review a trial court's findings of fact under a de novo standard with a presumption that those findings are correct unless otherwise proven by a preponderance of the evidence. *Id.* (citing Tenn.

R. App. P. 13(d); *Henley v. State*, 960 S.W.2d 572, 578 (Tenn. 1997)). The trial court's conclusions of law and application of the law to factual findings are reviewed de novo with no presumption of correctness. *Kendrick v. State*, 454 S.W.3d 450, 457 (Tenn. 2015).

When reviewing the trial court's findings of fact, this court does not reweigh the evidence or "substitute [its] own inferences for those drawn by the trial court." *Fields*, 40 S.W.3d at 456. Additionally, "questions concerning the credibility of the witnesses, the weight and value to be given their testimony, and the factual issues raised by the evidence are to be resolved by the [post-conviction court]." *Id.* (citing *Henley*, 960 S.W.2d at 579); *see also Kendrick*, 454 S.W.3d at 457.

### *Ineffective Assistance of Counsel*

The right to effective assistance of counsel is safeguarded by the Constitutions of both the United States and the State of Tennessee. U.S. Const. amend. VI; Tenn. Const. art. I, § 9. In order to receive post-conviction relief for ineffective assistance of counsel, a petitioner must prove: (1) that counsel's performance was deficient; and (2) that the deficiency prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see State v. Taylor*, 968 S.W.2d 900, 905 (Tenn. Crim. App. 1997) (stating that the same standard for ineffective assistance of counsel applies in both federal and Tennessee cases). Both factors must be proven in order for the court to grant post-conviction relief. *Strickland*, 466 U.S. at 687; *Henley*, 960 S.W.2d at 580; *Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996). Accordingly, if we determine that either factor is not satisfied, there is no need to consider the other factor. *Finch v. State*, 226 S.W.3d 307, 316 (Tenn. 2007) (citing *Carpenter v. State*, 126 S.W.3d 879, 886 (Tenn. 2004)). Additionally, review of counsel's performance "requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689; *see also Henley*, 960 S.W.2d at 579. We will not second-guess a reasonable trial strategy, and we will not grant relief based on a sound, yet ultimately unsuccessful, tactical decision. *Granderson v. State*, 197 S.W.3d 782, 790 (Tenn. Crim. App. 2006).

As to the first prong of the *Strickland* analysis, "counsel's performance is effective if the advice given or the services rendered are within the range of competence demanded of attorneys in criminal cases." *Henley*, 960 S.W.2d at 579 (citing *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975)); *see also Goad*, 938 S.W.2d at 369. In order to prove that counsel was deficient, the petitioner must demonstrate "that counsel's acts or omissions were so serious as to fall below an objective standard of reasonableness under prevailing professional norms." *Goad*, 938 S.W.2d at 369 (citing *Strickland*, 466 U.S. at 688); *see also Baxter*, 523 S.W.2d at 936.

- 6 -

Even if counsel's performance is deficient, the deficiency must have resulted in prejudice to the defense. *Goad*, 938 S.W.2d at 370. Therefore, under the second prong of the *Strickland* analysis, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 694. (internal quotation marks omitted).

*Failure to Object to Chain of Custody*

The Petitioner claims that trial counsel was deficient for not lodging an objection to the chain of custody of the Suboxone and argues that, if an objection had been made, "the outcome of the trial could have been different and this [c]ourt would have had a more detailed appellate record for review[.]" Although this court in the direct appeal determined that the Petitioner waived appellate review of the chain of custody issue by failing to contemporaneously object at trial, this court nevertheless elected to address the issue under a plain error analysis. *Michael Barnes*, 2014 WL 869548, at *3. This court held that "[t]he testimony presented at trial was sufficient to establish all links in the chain of custody . . . ." *Id.* at *4. The record for review in the Petitioner's direct appeal was detailed enough for this court to render a decision on the chain of custody issue.

The post-conviction court accredited by implication trial counsel's testimony that, during cross-examination, she "explored" issues concerning the chain of custody of the Suboxone but that she "didn't really get anywhere with it" and did not believe she had "enough of an issue to question . . . the chain of custody." The Petitioner failed to present any testimony or evidence at the post-conviction hearing, other than his own conclusory statements, to cast doubt upon the chain of custody. The post-conviction court found that the Petitioner failed to show that trial counsel's failure to object based on the chain of custody was deficient. We agree. Also, based on this court's prior opinion in the direct appeal concerning the chain of custody, the Petitioner has also failed to show that there was a reasonable probability that the result of the proceeding would have been different had trial counsel objected. *Strickland*, 466 U.S. at 694. The Petitioner is not entitled to relief on this ground.

*Exhibits Marked for Identification but Not Entered into Evidence*

Trial counsel admitted that she failed to object to certain exhibits that were not properly admitted into evidence. She characterized the failure as an oversight. The testimony at trial clearly identified the pills as Suboxone and established that the pills were found on the Petitioner during a search of his cell. *Michael Barnes*, 2014 WL 869548, at *6. At trial, the State asked for the packaged pills to "be marked as an exhibit." After the trial court granted the request, the State asked the trial court, "[D]o

- 7 -

you want me to publish this now or later?" The trial court responded, "You can do it now." The exhibit was published to the jury. After testimony concerning the chain of custody of the Suboxone and identification of the chain of custody form, a similar procedure and dialogue took place regarding the chain of custody form, which was marked as an exhibit and published to the jury at the request of the Petitioner and with the consent of the trial court.

In *State v. Richard Allen Kidd II*, this court addressed the publication of exhibits to the jury before the exhibits were formally introduced, stating:

> Additionally, we reject the defendant's argument that any alleged error was so egregious as to deprive the defendant of his right to a fair and impartial jury trial and resulted in such prejudice to the judicial process that reversal is required. Any arguable error by the trial court was harmless. The defendant has made no showing that any of the exhibits which were published to the jury were inadmissible under the Rules of Evidence. As such, we find no reversible error in the proceedings as to this issue.

No. 03C01-9607-CC-00272, 1997 WL 789909, at *4 (Tenn. Crim. App. Dec. 23, 1997).

The fact that the trial court granted permission to publish the exhibits to the jury clearly indicates that the trial court either assumed that the exhibits were introduced into evidence or that they were admissable. Only exhibits admitted into evidence should be published to the jury; however, the inadvertent publication of an exhibit marked only for identification is harmless if the exhibit was admissible had it been properly admitted and unless a defendant can show that he or she suffered prejudice as a result of the publication. *See State v. Ricky Dean Cole*, No. 03C01-9604-CC-00171, 1997 WL 420773, at *3 (Tenn. Crim. App. July 29, 1997) (concluding that it was harmless error for the trial court to publish an exhibit marked for identification only to the jury). The Petitioner failed to offer any proof at the post-conviction hearing to show that he was prejudiced by the publication of the exhibits to the jury or that there was a reasonable probability that the result of the trial would have been different had trial counsel objected to the publication of the exhibits to the jury. He is not entitled to relief on this ground.

### *Failure to Explain the Maximum Sentence*

The Petitioner also argues that trial counsel's performance was deficient because she failed to explain the maximum sentence that he faced. He claims that he "did not even know that a 15-year sentence was a possibility until he appeared for his sentencing hearing[.]" At the post-conviction hearing, trial counsel testified that she explained the minimum and maximum sentence to the Petitioner and said that the Petitioner knew that

he was facing a potential fifteen-year sentence. The post-conviction court credited trial counsel's testimony and found that "[trial counsel] clearly detailed the plea offer on the record and the potential for a fifteen[-]year sentence if convicted" and that the Petitioner, after being advised that he faced a possible fifteen-year sentence, rejected the plea offer and stated that he wanted to proceed with trial. The Petitioner's claim that he was unaware that he could receive a fifteen-year sentence is clearly refuted by the following jury-out dialogue during his jury trial:

> [Trial Counsel]: I've been representing you for quite some time on this case now, is that right?
>
> [The Petitioner]: Yes, ma'am.
>
> [Trial Counsel]: All right. And . . . the negotiated plea offer I brought to you prior to trial was six years as a Range II Offender consecutive to the current sentence that you're serving at Northeast Correctional Facility, is that right?
>
> [The Petitioner]: Yes, ma'am.
>
> [Trial Counsel]: Okay. And understanding that it's very possible you could get up to fifteen years were you to be convicted as charged with this felony today and the judge imposed the sentence. Nevertheless, you chose to go ahead and go to trial and reject that six years consecutive offer, is that right?
>
> [The Petitioner]: Yes, ma'am.

The Petitioner failed to show that trial counsel performed deficiently by failing to explain to him the maximum sentence he faced. His claim that he did not know that he could be sentenced to fifteen years is clearly without merit.

### *"Selective Prosecution"*

The State argues that the Petitioner has waived his due process claims by failing to raise them on direct appeal. Waiver notwithstanding, the State argues that the claim is not supported by the evidence. We will only address the Petitioner's claim in the context of the issue raised in this appeal—that the Petitioner received the ineffective assistance of counsel because trial counsel failed to raise a claim of selective prosecution at trial.

The Petitioner claims that he "continually requested [trial counsel] to address the issue of selective prosecution; however she refused." He claims that trial counsel's refusal amounted to deficient performance which deprived him of "a full evaluation of his claims and defense" and violated his due process rights. The Petitioner asked trial counsel to present proof to the jury that other inmates charged in this incident received plea offers for concurrent sentences, but the State only offered him a consecutive sentence.

The Petitioner's claim necessarily indicates that the other inmates were prosecuted, and therefore, the Petitioner was not "singled out" for prosecution "while others engaging in similar activity" were not prosecuted. *State v. Harton*, 108 S.W.3d 253, 261 (Tenn. Crim. App. 2002) (citing *421 Corp. v. Metro. Gov't*, 36 S.W.3d 469, 480 (Tenn. Ct. App. 2000)). The Petitioner's complaint does not involve selective prosecution, but rather seems to relate to what he considers a vindictive plea offer from the State. The Petitioner offered no proof at the post-conviction hearing that the State was acting with vindictiveness towards him when it made the plea offer. There is no basis in the record to conclude that the Petitioner, even if offered a plea that was harsher than the pleas offered to other inmates, was treated that way for an impermissible reason. The Petitioner did not offer proof at the post-conviction hearing concerning the other inmates charged in the incident so we do not know the level of their involvement in the offense or their criminal history. On the other hand, we know the Suboxone was found on the Petitioner and, based on the Petitioner's testimony during the post-conviction hearing, that he had previously been convicted of four counts of aggravated robbery, two counts of especially aggravated kidnapping, one count of aggravated burglary, one count of aggravated assault, and one count of burglary of an automobile. The Petitioner has failed to show that trial counsel was deficient for not trying to introduce proof of selective prosecution or vindictiveness on the part of the State.

Additionally, it is difficult to imagine how proof that the other inmates involved in the offense received more favorable plea offers from the State would have been relevant to the Petitioner's guilt or innocence at trial. The Petitioner has failed to show that there is a reasonable probability that the result of the proceeding would have been different had trial counsel attempted to introduce such proof.

## Conclusion

For the aforementioned reasons, the judgment of the post-conviction court is affirmed.

_____
ROBERT L. HOLLOWAY, JR., JUDGE